## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                    Case No. 21-20373

VANCE DAVIS,                     Hon. Denise Page Hood

     Defendant.

_____/

## ORDER DENYING DEFENDANT'S
## MOTION TO SUPPRESS [ECF No. 24]

## I.    Introduction

Defendant Vance Davis is charged with Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). The charge is based upon evidence allegedly recovered during a stop of Defendant on or about April 28, 2021.  Defendant has filed a Motion to Suppress [ECF No. 24] claiming that the stop and search was unlawful.  The Motion to Suppress was fully briefed, and the Court held hearings on the Motion. The Government called one witness, Detroit Police Department officer Troy Williams, at the first hearing.  Defendant called three witness, Vance Davis, Jyrell Mosby, and Beverly Knox, at the second hearing. The Government subsequently filed a Notice of Supplemental Authority, to which Defendant filed a response.  For the reasons that follow, Defendant's Motion to Suppress is denied.

1

## II.     Factual Background

On April 28, 2021, at about 6:00 p.m., Detroit Police Department ("DPD") officer Troy Williams ("Williams") and ATF Task Force officer Treva Eaton ("Eaton") conducted a *Terry* stop and search of Defendant. Reports authored by Williams and Eaton indicate that, while they were driving in an unmarked Chrysler 300 automobile conducting probation/parole checks, Defendant and a group of others were observed "walking in the street with sidewalks provided," in violation of M.C.L. § 257.655. Williams and Eaton chose to investigate them for the aforementioned civil infraction on Edmore Drive in Detroit, Michigan.

Upon approaching the group in their vehicle, Williams and Eaton claim to have observed a firearm in Defendant's right waistband.  Williams and Eaton reported that they then accelerated towards Defendant and stopped their unmarked vehicle. When they exited their vehicle, Defendant allegedly put his right hand on the gun and began to "flee."  When Williams issued several verbal commands to stop, Defendant promptly complied. Williams then physically detained Defendant and "immediately removed the visible firearm – a semi-automatic pistol with an extended magazine loaded with fifteen live rounds—from his waistband."  After detaining Defendant, the officers asked Defendant if he had a "CPL" (a Concealed Pistol License), and Defendant answered that he did not.  The officers announced that Defendant was under arrest for carrying a concealed weapon and transported

him to the Detroit Detention Center ("DDC").

Each party has submitted video taken from Eaton's body camera, and the video commences at the same point in time in both versions. The videos begin as the officers were in the process of detaining Defendant, and Williams had in his hand the firearm allegedly taken from Defendant's waistband. The video submitted by the Government ends shortly after the officers placed Defendant in the squad car and began driving to the DDC. The video submitted by Defendant continues for a period of several minutes more.

The testimony elicited at the hearings was largely consistent with the foregoing background garnered from the parties' briefs.

### III.    Analysis

The Fourth Amendment protects individuals against "unreasonable searches and seizures" by the government. U.S. Const. Amend. IV. Such protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *Terry v. Ohio*, 392 U.S. 1, 9 (1968); *United States v. Cortez*, 449 U.S. 411, 417 (1981). There are three kinds of permissible encounters between police and citizens: "(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention or *Terry* stop, which, if non-consensual must be supported by reasonable suspicion of criminal activity; and (3) the arrest,

valid only if supported by probable cause." *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010).

A *Terry* stop is permissible only if law enforcement officers have a "particularized and objective basis for suspecting the particular person stopped of criminal activity and were aware of specific and articulable facts which gave rise to reasonable suspicion." *United States v. Keith*, 559 F.3d 499, 503 (6th Cir. 2009) (internal quotes omitted); *Mitchell v. United States*, 233 F. App'x 547, 552 (6th Cir. 2007); *United States v. Cortez*, 449 U.S. 411, 417 (1981).  To justify an investigatory stop, an officer must observe some objective manifestation that the person stopped is engaged, or is about to engage, in criminal activity. *United States v. Moberly*, 861 F. App'x 27, 29 (6th Cir. 2021) (citing *Robinson v. Howes*, 663 F.3d 819, 828 (6th Cir. 2011)). "An officer must not act on an 'inchoate and unparticularized suspicion or hunch, but [on] the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *United States v. Abdi*, 827 F. App'x 499, 504 (6th Cir. 2020 (quoting *Terry*, 392 U.S. at 27). Reasonable suspicion is an objective standard, simple good faith on the part of the officer is not enough. *Terry*, 392 U.S. at 22.  "The determination of whether reasonable suspicion existed must be based on the totality of the circumstances." *United States v. Johnson*, 620 F.3d 685, 692 (6th Cir. 2010).

In examining the constitutionality of a *Terry* stop, a court must address two questions. First, whether there is a proper basis for the stop. *United States v. Davis*, 514 F.3d 596, 608 (6th Cir. 2008). The second question is whether the degree of intrusion exceeded the scope of the circumstances. *Id*. The authority to conduct a *Terry* stop is "narrowly drawn" to permit a reasonable search for weapons for the protection of the police officer "when they have reason to believe that the person with whom he is dealing with may be <u>armed and presently dangerous</u>." *Terry*, 392 U.S. at 30.

## A. The Stop

The Government argues that, because "Williams saw [Defendant] walking in the middle of the street with an extended magazine sticking out of his waistband, [Williams] had reasonable suspicion to approach [Defendant] for two reasons: (1) because [Defendant] was walking in the middle of the street where sidewalks were provided (*see* MCL 257.655), and (2) because [Defendant] was visibly armed, and carrying a pistol in Michigan is presumptively invalid." ECF No. 27, PageID.131. Defendant counters that the officers' decision to engage in a *Terry* stop was: (a) unsupported by reasonable suspicion that Defendant was engaged in criminal activity; and (b) derived from the very unparticularized hunch that *Terry* and its progeny prohibit.

The Court first examines Defendant's alleged jaywalking in violation of Section 257.655. Defendant denies he was walking in the street, in violation of M.C.L. § 257.655, as the officers alleged in the police reports. He claims there is no evidence that he violated the "jaywalking" statute of M.C.L. § 257.655, so the officers had no basis to conduct a stop of him. Williams testified that Defendant was walking in the street when there were sidewalks present. The Government asserts that this alleged infraction "alone [gave] . . . Williams . . . reasonable suspicion to at least approach [Defendant] to investigate him for this infraction." ECF No. 27, PageID.131. The Government is correct that the officers had reasonable suspicion to approach Defendant to investigate him for the civil infraction.

The Court finds that the law does not support the Government's position that investigating Defendant for an alleged violation of M.C.L. § 257.655 supports a *Terry* stop. Even if Plaintiff was in violation of M.C.L. § 257.655, such conduct would constitute a *civil* infraction. Such conduct does not provide the basis for reasonable suspicion of ***any criminal activity*** that would justify a *Terry* stop.

The Court next addresses the Government's allegations that the officers could see that Defendant had a firearm in his right waistband as they drove toward Defendant for purposes of investigating the alleged violation of M.C.L. § 257.655. The Government maintains that Michigan law makes it unlawful (a crime) for a person to "carry a pistol concealed" on her or his person or in a vehicle without a

license to do so. M.C.L. § 750.227(2).  It is undisputed that a person must have a license on their person "at all times he or she is carrying a concealed pistol" and must "show" the license "upon request by [a] peace officer." M.C.L. § 28.425f. *See also* M.C.L. § 750.231a (a license is an exception to the prohibition against carrying a concealed pistol).

The Government cites numerous cases where courts have held that a defendant has the burden of producing a license to carry a concealed weapon, and that Government need not show the absence of a license to establish the felony offense of carrying a concealed weapon under M.C.L. § 750.227(2). *See People v. Henderson*, 218 N.W.2d 2 (Mich. 1974); *People v. Perkins*, 703 N.W.2d 448 (Mich. 2005); *United States v. Graham*, No. 21-20433, 2022 WL 4099447 (E.D. Mich. Sept. 7, 2022).

The Government also cited several cases where a person had a firearm in a vehicle without a CPL, which the person was required to produce in order to legally possess the firearm. *United States v. Galaviz*, 645 F.3d 347 (6th Cir. 2011); *United States v. Williams*, 483 F. App'x 21, 27 (6th Cir. 2012); *United States v. Stevenson*, No. 21-20375, ECF No. 33, PageID.187 (E.D. Mich. Nov. 30, 2021); *United States v. Lamb*, No. 16-20077, 2016 4249193, at *4 (E.D. Mich. July 6, 2016), report and recommendation adopted, 2016 WL 4191758 (E.D. Mich. Aug. 9, 2016).  Defendant counters that these cases involve the retrieval of firearms from vehicles based on the

automobile exception and the firearms being in plain view, not arrest or seizure of a person who they could have asked if he had a CPL prior to effectuating any stop.[1]

The Government concludes that the foregoing cases lead to one conclusion: "carrying a concealed weapon in Michigan is presumptively unlawful." Relying on *Graham*, 2022 WL 4099447, at *4 ("the Government has a prima facie case that anyone carrying a concealed pistol is violating the law, . . . "). Also citing *United States v. Pope*, 910 F.3d 413, 416 (8th Cir. 2018) ("carrying a concealed weapon in **Iowa** is presumptively criminal . . . thus we think the officer had reasonable suspicion that criminal activity was afoot when he personally observed Pope place the gun in his waistband."); *United States v. Ferguson*, No. 19-3894, 2020 WL 10140803, at *3 (6th Cir. June 3, 2020) (officers lawfully conducted a *Terry* stop based on a visible firearm in the defendant's car because a loaded firearm in a vehicle is presumptively unlawful in **Ohio**); *United States v. Gatlin*, 613 F.3d 374, 378 (3rd Cir. 2010) (**Delaware** officers had reasonable suspicion that defendant was engaged in a crime based solely on information that he was carrying a concealed handgun because presumptively unlawful in that state).

---

[1] The Government cited another case that is not relevant because it involved a consensual encounter, which was not the situation here.  In that case, the court concluded that officers had reasonable suspicion to seize the defendant who admitted he was armed and was detained by officers on that basis while determining whether or not the defendant had a valid CPL. *United States v. Leverett*, No. 19-20098, ECF No. 36 (E.D. Mich. July 24, 2019).

For these reasons, the Government contends that Williams and Eaton were justified in approaching Defendant once they saw that he was armed, as they had the right to investigate whether Defendant was lawfully possessing the firearm.

The Government acknowledges that, where gun possession is presumptively lawful by statute, courts have found that officers lack reasonable suspicion of criminal activity simply because there is a visible firearm. *See, e.g., Northrup v. City of Toledo Police Dep't*, 785 F.3d 1128, 1132–33 (6th Cir. 2015) ("[w]here it is lawful to possess firearms, unlawful possession is not the default status"); *United States v. Black*, 707 F.3d 531, 540 (4th Cir. 2013) ("where a state permits individuals to carry firearms, the exercise of this right, without more, cannot justify an investigatory detention"); *United States v. Ubiles*, 224 F.3d 213, 217 (3d Cir. 2000) (the court invalidated a Terry stop based upon the suspicion of gun possession at a street festival because local law permitted public possession of firearms).

Defendant, in his reply brief, states that the Government's position that law enforcement officers can conduct a *Terry* stop based only on a visible firearm, without indication of criminal activity, runs counter to the core principles of *Terry* and the intent and will of the Michigan legislature.  Defendant argues that adoption of the Government's position would allow for discriminatory application of stops. He notes that M.C.L. § 750.227(2) only provides that carrying a firearm without a license is a crime; it does not indicate that carrying a visible firearm is a presumptive

crime.  Defendant contends that M.C.L. § 28.425f corroborates this perspective, as it provides that a citizen must produce his/her CPL and identification upon request by an officer.  Defendant asserts that the requirement to produce the CPL and identification upon request demonstrates that there is not a presumption of illegality for simply carrying a gun, as further evidenced by the language of "without a license."

Defendant maintains the right to possess a firearm is salient because the officers did not attempt to determine his CPL status--and, in fact, he did not have an opportunity to present a CPL (if he had one)--until after the officers took the gun and searched him as they arrested him.  Defendant argues that, because the officers did not ask before removing the gun and seizing his person, there was no objective basis for believing that Defendant was engaging, or was about to engage, in criminal activity. *United States v. Moberly*, 861 F. App'x 27, 29 (6th Cir. 2021) (citing *Robinson v. Howes*, 663 F.Ed 819, 828 (6th Cir. 2011)).  Defendant further argues that this case is unlike *Graham* because officers took his gun and seized him before asking Defendant whether he had a CPL, whereas the officers in *Graham* asked about the CPL before touching the defendant.

Defendant also asserts that Michigan is a ***concealed carry*** state, such that an officer's belief that a person is armed does not suggest criminal activity is afoot that would justify a *Terry* stop, in the absence of having reason to believe the person was

dangerous. Citing *Terry*, 392 U.S. at 30 (emphasis added) (the authority to conduct a *Terry* stop is "narrowly drawn" to permit a reasonable search for weapons for the protection of the police officer "when they have reason to believe that the person with whom he is dealing with may be ***armed and presently dangerous***."); *Northrup*, 785 F.3d at 1131  (holding that where state law permits the open carry of firearms, police are not authorized by *Terry* to conduct a stop or frisk); *United States v. Black*, 707 F.3d 531, 540 (4th Cir. 2013) (where a state permits individuals to carry firearms, the exercise of this right, without more, cannot justify an investigatory detention); M.C.L. § 28.425f (1) and (2).

Some courts in this district have concluded that law enforcement officers in Michgian have no reasonable suspicion to conduct a *Terry* stop based on unparticularized hunches that a person is carrying a firearm. *See United States v. Robinson*, No. 15-cr-20248, (E.D. Mich. Aug. 3, 2015) (police lacked reasonable suspicion to conduct a *Terry* stop based upon M.C.L. 257.655, where a citizen was merely crossing a residential street and police allegedly observed a firearm in his pocket); *United States v. Davis*, 554 F. App'x. 485, 489-90 (6th Cir. 2014) (holding that stop and search were unsupported by reasonable suspicion where police, in an unmarked car, approached defendant walking near a gas station and proceeded to detain and search him based upon defendant reaching into a pocket with bulge in it). *See also United States v. Beauchamp*, 659 F.3d 560 (6th Cir. 2011) (holding that

insufficient reasonable suspicion existed where defendant walked away from police, police ordered defendant to stop and then questioned defendant as to his whereabouts); *United States v. See*, 574 F.3d 309 (6th Cir. 2009) (without additional objective indications of criminal activity, there was no reasonable suspicion to stop defendant for merely being parked in a high crime area at night).

In this case, the Court assumes without deciding that Williams and Eaton had reasonable suspicion to stop and question Defendant about the firearm in his waistband. The fact that the officers then seized Defendant before asking if he had a CPL, however, was not justified. *See Davis, supra*; *see also United States v. Floyd*, No. 21-CR-20010, 2021 WL 2805806 (E.D. Mich. July 6, 2021) (holding that officers lacked the requisite reasonable suspicion to stop and search defendant based upon mere fact that officers saw that he was carrying a firearm (an extended magazine).

### B. Inevitable Discovery

The Government proposes that, even if the officers had only approached Defendant, without stopping him in any manner, they would have retrieved the firearm from Defendant.  The Government argues that, if the officers had simply walked up to Defendant and asked him for his CPL, he either would have admitted that he did not have a CPL or, if he lied and said he had a CPL, he would not have been able to produce a valid license.  The Government is correct that, if Defendant

admitted he did not have a CPL or was unable to produce his CPL, the fact that he had the firearm on his person at that time would have constituted a crime for which the officers would have had the right to arrest Defendant and charge him with felon in possession of a firearm (and a violation of M.C.L. § 750.227(2)). *See United States v. Bridges*, 2016 WL 3922354, at *6 (E.D. Mich. July 21, 2016) ("The failure to produce the license supported the conclusion that the defendant was committing a felony.").

Defendant counters that the Court must inquire whether a lawful arrest—and thus the discovery of the evidence pursuant to a lawful search—was "inevitable." That is, the Court would have to conclude that the arrest would have happened, not just that it could have happened. Citing *Nix v. Williams*, 467 U.S. 431, 444–45 n.5 (1984); *see also United States v. Thomas*, 434 F. Supp. 3d 576, 586 (W.D. Ky. 2020) (refusing to apply inevitable discovery doctrine where the officers' testimony and bodycam footage did not support the argument that they would have inevitably discovered a firearm in a vehicle based upon the smell of marijuana).

Defendant argues that neither the stop nor search of Defendant was valid, so the argument that officers may have properly seized the gun is highly speculative, such that the proposed inevitability should be rejected. Citing *Nix v. Williams*, 467 U.S. 431, 444-45 n.5 (1984) ("inevitable discovery involves no speculative elements"). Defendant states that "[we] must keep speculation at a minimum by

focusing on demonstrated historical facts capable of ready verification or impeachment." *United States v. Lazar*, 604 F.3d 230, 240 (6th Cir. 2010) (quoting *United States v. Ford*, 184 F.3d 566, 577 (6th Cir. 1999)).  Defendant argues that, similar to *Thomas*, there is no evidence supporting that officers would have inevitably recovered a firearm.  The Court does not agree.

This case is much different than *Thomas*, where the officers claimed they would have found a firearm based on smelling marijuana in a car.  Here, the Court concludes that officers would find a firearm when: (a) they see the firearm; (b) ask if the person who is carrying the firearm has a CPL; and (c) hear the person respond that he or she does not have a CPL. The instant case does not involve a firearm that was not visible at the time of police contact; rather, the visible firearm on Defendant's person was the reason the officers stopped Defendant (as opposed to others in the group) and removed the firearm from his waistband. For these reasons, the Court finds that, pursuant to the inevitable discovery doctrine, Williams and Eaton would have had the right to seize the firearm from Defendant, even if they had not seized Defendant before asking if he had a CPL.  The Motion to Suppress is denied.

## IV.  Conclusion

Accordingly, and for the reasons stated above,

IT IS ORDERED that Defendant's Motion to Suppress [ECF No. 24] is DENIED.


Dated:  October 26, 2023                    s/DENISE PAGE HOOD
                                            DENISE PAGE HOOD
                                            UNITED STATES DISTRICT JUDGE